UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SHAKER MANNS,**
*An Individual;*

      Plaintiff,

vs.                                                      Case No.   16-CV-12031
                                       Hon. Linda V. Parker
                                       Mag.  Elizabeth A. Stafford

**ITC HOLDINGS CORP.,**
*A Michigan Corporation;*

      Defendant.

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Benjamin I. Shipper (P77558)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com
_____

## <u>CORRECTED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

      Plaintiff Shaker Manns, by his attorneys Deborah Gordon Law, complains

against Defendant as follows:

### Jurisdiction and Venue Are Appropriate

1.      Plaintiff Shaker Manns is a resident of the Eastern District of Michigan.

2.     Defendant ITC Holdings (hereinafter "Defendant") is a Michigan corporation with its headquarters in the Eastern District of Michigan.

3.     This matter involves interference and retaliation with Plaintiff's federally protected rights arising under the Family Medical Leave Act, (hereinafter "FMLA") racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 482 U.S.C. § 2000(e), *et seq.*, racial discrimination and retaliation in violation of the Elliott Larsen Civil Rights Act, M.C.L. § 37.201 *et seq.*, and termination in violation of public policy.

4.     Subject matter jurisdiction arises under 29 U.S.C. § 2601 (FMLA) and 28 U.S.C. § 1331 (federal question), and § 1343 (civil rights).

5.     The Court has pendent jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

6.     The events giving rise to this occurred in the Eastern District of Michigan, and venue is proper within the meaning of 28 U.S.C. § 1391.

7.     The Equal Employment Opportunity Commission issued Plaintiff a Right to Sue Letter on June 1, 2016.

### Factual Allegations

8.     Defendant is a power transmission company with its headquarters in Novi, Michigan.

9.     Plaintiff is an African-American man.

2

10.   Plaintiff was hired by Defendant on or about August 25, 2008 as an Electrical Engineer.

11.   Plaintiff was promoted on April 29, 2010 to Senior Engineer.

12.   At Defendant, the hierarchy of positions is as follows: Associate Engineer, Engineer, Senior Engineer, Principal Engineer, Manager, Director and Vice President.

13.   In early 2012, Plaintiff was assigned a new set of responsibilities managing, tracking, benchmarking, and reporting all reliability measures for use internally throughout the company and externally to various parties including regulators, customers and governmental agencies.

14.   Plaintiff's performance was satisfactory or better at all times.

### *Plaintiff Seeks Opportunities to Advance And Is Denied Numerous Promotions*

15.   Between December 2012 and January 2013, Plaintiff sought and was denied a promotion to Principal Engineer.

16.   In February 2013, Plaintiff again sought a promotion to Principal Engineer and was denied.

17.   At that time, Jon Weist, Manager, Network Applications told Plaintiff that he could not be promoted because Principal Engineers must have two subordinates reporting to them.

18. Plaintiff responded with examples of several Caucasian Principal Engineers that did not satisfy this criteria.

19. In January 2014, Plaintiff interviewed for several Director level positions, but was not promoted.

### *Plaintiff Is Denied a Promotion to Manager Over a Less-Qualified Caucasian*

20. In November 2014, Plaintiff interviewed for a Manager position.

21. In December 2014, Darrel Yohnk, a Director at Defendant, notified plaintiff that he did not get the position.

22. Yohnk promoted a less qualified, Caucasian male instead.

### *Plaintiff Complains about Defendant's Hiring and Promotion Practices*

23. In or about February 2015, Plaintiff met with Defendant's Human Resources staff and complained that he had been passed over for promotion unfairly for a less-qualified candidate.

24. Ten days later, Plaintiff was accused of being unprofessional in the meeting objecting to unfair treatment.

25. Plaintiff asked what he had done that was unprofessional, but was given no details.

26. At the end of February 2015, Plaintiff received a positive performance evaluation for 2014.

4

27. In or about June 2015, Plaintiff complained again to his supervisors (Gupta and Sherry Tang, his Manager) that he was being treated unfairly and wished to be promoted.

28. Gupta said he would raise the issue with Defendant's senior management.

29. Plaintiff was again told that he would not be promoted.

30. In July 2015, Plaintiff had a satisfactory mid-year review.

### Plaintiff Goes on FMLA and Objects to Defendant's Interference with his Leave

31. On September 11, 2015, Plaintiff went on an approved FMLA leave for the birth of a child.

32. Plaintiff was advised in writing that he would be on FMLA from September 28 to December 7, 2015.

33. Defendant's employees repeatedly contacted Plaintiff while on FMLA leave with regard to work and business matters.

34. On or about October 12, 2015, after receiving an early morning call from Defendant's office, Plaintiff contacted Defendant's Human Resources staff and requested the interference with his FMLA leave cease.

35. On or about December 7, 2015, Plaintiff returned to work.

### Plaintiff Objects to Violations of Law

36. In or about December 2015, Plaintiff met with attorneys for Defendant regarding separate intellectual property litigation.

37.   During that meeting, Plaintiff reported and objected to violations of law involving Defendant.

### Plaintiff is Refused Promotion Again and Opts to be Reassigned

38.   Later in December 2015, Tang and Gupta told Plaintiff that he was going to have two employees working under him on reliability issues and that he would continue to be the "face" of reliability.

39.   Plaintiff again asked to be promoted, in light of the additional duties of managing two employees, and was again denied.

40.   Concluding he would never be fairly treated in his current role, Plaintiff requested a re-assignment.

41.   Tang and Gupta agreed and Plaintiff was reassigned to be a Michigan Studies Engineer.

### Plaintiff Complains about Interference with FMLA and is Retaliated Against

42.   On or about January 21, 2016, Plaintiff was told by Tang to complete the self-assessment portion of his performance review for the 2015 year.

43.   In doing so, Plaintiff objected to Defendant's interference with his FMLA leave in the fall of 2015.

44.   A week later, Tang told Plaintiff he shouldn't have written those comments in his self-assessment.

6

45. On the morning of February 3, 2016, Plaintiff emailed Human Resources requesting his personnel file.

46. Shortly thereafter, Tang asked Plaintiff to meet with her later in the day.

47. At the meeting, Plaintiff was told he was being written up for insubordination.

### Plaintiff Complains of Racial Discrimination and Is Retaliated Against

48. On or about February 3, 2016, Plaintiff complained in writing to his manager and verbally to Human Resources of racial discrimination.

49. Within two weeks, Plaintiff was given a below average performance rating for 2015, his first in his eight years with Defendant.

50. During a meeting about his 2015 performance review, Tang again raised Plaintiff's objections to Defendant's interference with his FMLA leave, saying she was disappointed he complained.

### Plaintiff Complains of Retaliation but the Retaliation Only Increases

51. During a meeting with Human Resources on February 21, 2016, Plaintiff complained of retaliation for complaining of racial discrimination and FMLA interference.

52. On March 21, 2016, Plaintiff was further retaliated against and told he would not get a merit increase or a raise.

53. On March 24, 2016 Plaintiff met with Human Resources and was told his complaints were unfounded, and that he was being written up again.

54. Plaintiff was under such serious stress from the harassment and retaliation that he sought counseling.

### *Plaintiff Complains to the EEOC and Is Retaliated Against*

55. On or about April 4, 2016 Plaintiff filed a complaint of racial discrimination and retaliation with the Equal Employment Opportunity Commission.

56. On or about April 6, 2016 Plaintiff was advised that he had two weeks of FMLA leave available to him.

57. On or about April 14, 2016, Plaintiff submitted paperwork for a two-week FMLA leave.

58. On or about April 15, 2016, apparently in an effort to harass him further, Plaintiff was advised he had no available FMLA time remaining.

59. Due to the continuing interference, harassment, retaliation and discrimination, Plaintiff was compelled to resign and did resign on April 20, 2016.

### COUNT I
### Family Medical Leave Act

60. Plaintiff repeats the aforementioned paragraphs as if they were set forth in full herein.

61.   Defendant is an employer and Plaintiff an employee covered by the Family and Medical Leave Act pursuant to 29 U.S.C. § 2601 et seq.

62.   Plaintiff was entitled to leave under the Family and Medical Leave Act, and was qualified to enjoy its protections as set forth above.

63.   Defendant engaged in prohibited conduct under the FMLA by interfering with, restraining or denying Plaintiff's rights provided under the Act.

64.   Defendant engaged in further prohibited conduct under the FMLA by retaliating against Plaintiff for invoking protections of the Act.

65.   Defendant engaged in further prohibited conduct under the FMLA by retaliating against Plaintiff for objecting to Defendant's interference with the protections of the Act.

66.   Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

67.   As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

68.   As a direct and proximate result of Defendant's wrongdoing, Plaintiff has sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and retirement benefits, loss of job and career opportunities, damage to his good name and reputation in the community,

mental and emotional distress, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life.

**COUNT II**
**Racial Discrimination (Title VII of the Civil Rights Act of 1964)**

69.   Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

70.   At all relevant times, Plaintiff was an employee and Defendant his employer within the meanings set forth in the Title VII of the Civil Rights Act of 1964, *as amended*, 482 U.S.C. § 2000(e), *et seq*.

71.   Plaintiff is a member of a protected class; his is African- American.

72.   At all times, Plaintiff performed his job duties in a manner that was satisfactory or better.

73.   Defendant's treatment of Plaintiff, as described above, was based, at least in part, on the unlawful consideration of his race.

74.   Similarly situated Caucasians were treated better in the terms and conditions of their employment and were promoted.

75.   Agents of Defendant were predisposed to discriminate against Plaintiff based on his race.

76.   The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

77.    As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

78.    As a direct and proximate result of Defendant's wrongdoing, Plaintiff has sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and retirement benefits, loss of job and career opportunities, damage to his good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life.

### COUNT III
**Retaliation (Title VII of the Civil Rights Act of 1964)**

79.    Plaintiff repeats the aforementioned paragraphs as if they were set forth in full herein.

80.    At all relevant times, Plaintiff was an employee and Defendant his employer within the meanings set forth in the Title VII of the Civil Rights Act of 1964, *as amended*, 482 U.S.C. 2000e, *et seq*.

81.    Title VII prohibits retaliation against any person "because the person has opposed a violation of this act or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act."  M.C.L. § 37.2701.

82.   Plaintiff engaged in activity protected by Title VII when he complained of and opposed unlawful racial discrimination.

83.   The retaliation, by Defendant, that Plaintiff experienced included, but was not limited to, reducing his performance evaluation, eliminating his merit increase, disciplining him, disparaging him, recalculating his FMLA usage, harassing him and terminating him.

84.   The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

85.   As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

86.   As a direct and proximate result of Defendant's wrongdoing, Plaintiff has sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and retirement benefits, loss of job and career opportunities, damage to his good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life.

## COUNT IV
### Discrimination in Violation of the Elliott-Larsen Civil Rights Act

87.   Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

88.   At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.2101 *et seq.*

89.   Plaintiff's race was a factor that made a difference in Defendant's decisions with regard to Plaintiff's hiring, compensation, benefits, promotion, discipline, performance evaluations and termination.

90.   Had Plaintiff been Caucasian, he would have received higher compensation and benefits, promotions, performance reviews, merit increases, and would not have been disciplined, harassed or terminated.

91.   Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

92.   Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated Caucasian employees in the terms and conditions of employment, based on unlawful consideration of race.

93.   The actions of Defendant, by their agents, employees and representatives, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

94. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

95. As a direct and proximate result of Defendant's wrongdoing, Plaintiff has sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and retirement benefits, loss of job and career opportunities, damage to his good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life.

## COUNT V
## Retaliation in Violation of the Elliott-Larsen Civil Rights Act

96. Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

97. Plaintiff was an employee and Defendant his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*

98. Plaintiff's treatment and termination were in retaliation because Plaintiff opposed, objected to and refused to acquiesce in racially discriminatory employment practices, in violation of the anti-retaliation provisions in the Elliott-Larsen Civil Rights Act, *supra*.

99.  The actions of Defendant, by their agents, employees and representatives, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

100.  As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

101.  As a direct and proximate result of Defendant's wrongdoing, Plaintiff has sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and retirement benefits, loss of job and career opportunities, damage to his good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life.

## <u>COUNT VI</u>
### Retaliation in Violation of Michigan Public Policy – "Public Policy Tort"

102.  Plaintiff hereby incorporates all prior paragraphs as if set forth fully herein.

103.  During his employment with Defendant, Plaintiff failed and refused to violate or acquiesce in violations of law, statutes, regulations and/or rules promulgated pursuant to law.

104.  In particular, Plaintiff failed and refused to violate or acquiesce in the unlawful use of the intellectual property of another corporation.

105. The harassment, retaliation and termination of Plaintiff were carried out, in part, in retaliation for his failure and refusal to violate or acquiesce in violations of law.

106. The harassment, retaliation and termination of Plaintiff violated clearly established public policy of the State of Michigan that an employer may not discharge an employee where the alleged reason for the discharge of the employee is the failure or refusal to violate a law in the course of employment.

107. The actions of Defendant, its agent, representatives and employees were intentional and willful, and were in deliberate disregard of and made with reckless indifference to the rights and sensibilities of Plaintiff.

108. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully disciplined, harassed and terminated.

109. As a direct and proximate result of Defendant's wrongdoing, Plaintiff has sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and retirement benefits, loss of job and career opportunities, damage to his good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life.

### *Relief Requested*

Plaintiff demands judgment against Defendant as follows:

A.    Legal Relief:

    1.    Compensatory damages in whatever amount Plaintiff is found to be entitled;

    2.    Exemplary damages in whatever amount Plaintiff is found to be entitled;

    3.    Punitive damages in whatever amount Plaintiff is found to be entitled;

    4.    Liquidated damages in whatever amount Plaintiff is found to be entitled; and

    5.    An award of interest, costs, reasonable attorney fees, and expert witness fees.

B.    Equitable Relief:

    1.    An order from this Court placing Plaintiff in the position he would have been in had there been no wrongdoing by Defendant, including reinstatement with back pay;

    2.    An injunction out of this Court prohibiting any further acts of wrongdoing;

    3.    An award of interest, costs and reasonable attorney fees; and

    4.    Whatever other equitable relief appears appropriate at the time of final judgment.

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Benjamin I. Shipper (P77558)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com

Dated:  July 11, 2016

## JURY DEMAND

Plaintiff Shaker Manns, by his attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause.

**DEBORAH GORDON LAW**
/s/ Deborah L. Gordon (P27058)
Benjamin I. Shipper (P77558)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com

Dated:  July 11, 2016